IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SUSAN GAMANE,
and
JOHN GAMANE

    Plaintiffs,

v.                                                            No. 1:22-cv-01199-JDB-jay

CRAIG LAMAN,
MIA DIAMOND,
HARBER-LAMAN, LLC,
HARBER-LAMAN HEALTHCARE
MANAGEMENT,
and
BELLS RETIREMENT VILLAGE,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiffs filed a Complaint against Defendants on September 15, 2022, asserting various claims pursuant to the Fair Housing Amendments Act (FHA). ECF No. 1 at ¶ 1. On February 16, 2023, Plaintiffs filed a Motion for Temporary Restraining Order and Motion for Preliminary Injunction. ECF No. 18; ECF No. 21-1.[1] The Motions, in short, claim that Ms. Gamane is entitled to an emotional support animal (ESA) and that Defendants have failed to provide a reasonable accommodation as required under the FHA. ECF No. 21-1 at 2. Therefore, Plaintiffs seek a

---

[1] The Court notes that the corrected Motions filed at ECF No. 21-1 are substantively the same as the first Motions filed at ECF No. 18; the notable changes include the required certificate of consultation and proper notarization. ECF No. 21-1; ECF No. 21-2. Although the District Court referred the Motions filed at ECF No. 18, the Court will cite to ECF No. 21-1 to ensure it addresses the corrected Motions. ECF No. 20.

1

preliminary injunction that would grant Ms. Gamane the right to have an ESA while this litigation proceeds, as well as a temporary restraining order (TRO) that will prevent Defendants "from interfering with the Plaintiffs' tenancy or right to peaceful enjoyment of their home." ECF No. 21-1 at 8-9. Defendants filed a Response to the Motions, objecting to Plaintiffs' assertions that Ms. Gamane is entitled to an ESA such that a preliminary injunction or TRO is appropriate. ECF No. 24 at 3-5.

The District Court referred this matter to the undersigned for a Report and Recommendation. ECF No. 20. Based on the following analysis, the undersigned RECOMMENDS that Plaintiffs' Motions be DENIED.

## I. BACKGROUND

Plaintiffs moved into Bells Retirement Village in August 2018. ECF No. 24 at 1. Bells Retirement Village's standard lease agreement provides that "NO PETS nor animals of any type or kind . . . shall be permitted in the apartment at any time, either temporary or permanent." ECF No. 24-1 at 7. Additionally, this facility is "designed for older individuals" and includes services for elderly residents like housekeeping and food delivery. ECF No. 24-1 at 2. Plaintiffs, who are husband and wife, lived at Bells Retirement Village for just over three years without any pets or animals before making "a reasonable accommodation request from Defendants for an emotional support animal, a cat," which Defendants denied. ECF No. 21-1 at 2.

Plaintiffs assert that Ms. Gamane "had a disability" such that she falls within the scope of the FHA's protections. ECF No. 21-1 at 6. While Defendants claim that Plaintiffs never submitted "information sufficient to conclude that [Ms. Gamane] has a condition that affects a major life activity[,]" they nonetheless concede that "Ms. Gamane is physically unable to care for herself . . . ." ECF No. 24 at 5. Defendants also included in their Response, a copy of the letter submitted by

Ms. Gamane's medical provider which states that she "has significant problems with anxiety and depression." ECF No. 24-1.   Ms. Gamane suffered from a double stroke in July 2022, and she has been receiving hospice care since September 2022. ECF No. 21-1 at 2. Plaintiffs highlight the severity of Ms. Gamane's illness by stating that "every day is vital because it might be her last." ECF No. 21-1 at 3. According to Ms. Gamane's medical provider, Ms. Gamane "recently lost her cat of many years, [which] has been extremely stressful and depressing to her. She would benefit from another cat as an emotional support pet." ECF No. 24-1 at 13.

Defendants include in their Response the Declaration of Mia Diamond, who has been the administrator of Bells Retirement Village since July 1, 2021. ECF No. 24-1 at ¶ 2. Ms. Diamond asserts that "staff members enter the residents' apartments at least five (5) times per day." ECF No. 24-1 at ¶ 8. Additionally, Ms. Diamond provides that some residents in the facility, along with at least one employee, are allergic to cats. ECF No. 24-1 at ¶¶ 19-20. There also is one employee who has "a fear of cats." ECF No. 24-1 at ¶ 21. Apparently, there is also a resident who "has indicated that he or she will move out if Plaintiffs are allowed to have a cat and that they will pursue a claim against the Defendants for violating the 'no pets' policy in the lease signed by that resident." ECF No. 24-1 at ¶ 22.

## II.   LEGAL STANDARDS

The question before the Court at this juncture is not whether Plaintiffs are ultimately entitled to an ESA under the FHA. Rather, the question is limited to whether Plaintiffs are entitled to a preliminary injunction that would allow them to obtain an ESA, and a TRO that would restrain Defendants from interfering with Plaintiffs' right to an ESA, during the pendency of this action.

### A. TEMPORARY RESTRAINING ORDERS AND PRELIMINARY INJUNCTIONS

When evaluating whether a party is entitled to a TRO or preliminary injunction, courts consider each "under the same standard . . . ." *G.S. v. Lee*, 558 F.Supp. 3d 601, 607 (W.D. Tenn. Sept. 3, 2021). There are four factors that must be considered. The first is "whether the movant has shown a strong likelihood of success on the merits." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The second factor is "whether the movant will suffer irreparable harm if the injunction is not issued." *Overstreet*, 305 F.3d at 573. The third is "whether the . . . injunction would cause substantial harm to others." *Id*. Finally, the fourth consideration is "whether the public interest would be served by issuing the injunction." *Id*.

Of course, these factors work in a balancing test and "are not prerequisites . . . ." *Id*. However, "'a finding that there is simply no likelihood of success on the merits is usually fatal' to a plaintiff's quest for a preliminary injunction." *Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (quoting *Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)). Moreover, preliminary injunctions are "extraordinary remed[ies] which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573 (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

### B. REASONABLE ACCOMMODATIONS FOR EMOTIONAL SUPPORT ANIMALS

Under the FHA, it is unlawful to "discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Discrimination under this statute includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, which such accommodations may be

necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). In order to succeed on a claim that a housing provider failed to make a reasonable accommodation, the plaintiff must show:

> (1) she suffers from a disability within the meaning of FHA; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation.

*Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011) (internal quotations omitted).

A person is considered disabled under the FHA when they have "a physical or mental impairment which substantially limits one or more of such person's major life activities, a record of having such an impairment, or being regarded as having such impairment." 42 U.S.C. § 3602(h). A reasonable accommodation is one that "imposes no fundamental alteration in the nature of the program or undue financial and administrative burdens" for the housing provider. *Howard v. Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2022) (internal quotations omitted). Equal opportunity means "giving handicapped individuals the right to choose to live in [their desired neighborhood], for that right serves to end the exclusion of handicapped individuals from the American mainstream." *Howard,* 276 F.3d at 806 (internal quotations omitted). Finally, an accommodation is "necessary" when a plaintiff shows that "but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Id*. (internal quotations omitted).

The statute expressly provides that in a civil action, courts may issue permanent or temporary injunctions, as well as temporary restraining orders, where "the court finds that a discriminatory housing practice has occurred or is about to occur . . . ." 42 U.S.C. § 3613(c)(1).

### III.     ANALYSIS

The undersigned RECOMMENDS a finding that Plaintiffs have not carried their burden of establishing that they are entitled to injunctive relief, and that the Motions be DENIED.

#### A. PLAINTIFFS HAVE NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS

In order to be entitled to a preliminary injunction, Plaintiffs need to establish a likelihood of success on the merits. Plaintiffs must show that Ms. Gamane is handicapped, Defendants knew or should have known of the handicap, the accommodation is necessary to allow Ms. Gamane equal opportunity to use and enjoy her home, the accommodation is reasonable, and Defendants denied her request.[2] The undersigned finds that Plaintiffs have failed to meet their burden.

#### 1. Ms. Gamane is Handicapped Under the FHA and Defendants Knew of Her Condition

As to the issue of handicap, the Court finds there is no real dispute here. A handicap, under the FHA, is a condition that "substantially limits one or more of [the disabled] person's major life activities . . . ." 42 U.S.C. § 3602(h). The letter provided by Ms. Gamane's doctor asserts that she suffers from anxiety and depression. ECF No. 24-1 at 13. Although Defendants assert Ms. Gamane has failed to establish a handicap, their own filings paint a different picture. The Affidavit Defendants included in their Response establishes that "Ms. Gamane is physically unable to care for herself" and "Mr. Gamane is tasked with caring for Ms. Gamane." ECF No. 24-1 at 3. Plaintiffs illuminate the issue regarding Ms. Gamane's health further by noting she "suffered from a double stroke" and "signed up for Hospice care . . . ." ECF No. 21-1 at 2. The Court can find no dispute

---

[2] It is plain from the filings that Defendants have denied Plaintiffs' request for an ESA; as such the Court will focus its analysis on the remaining elements. ECF No. 21-1 at 2-3.

as to whether Ms. Gamane suffers from *some* type of mental or physical limitation that meets the definition of handicap under the FHA.

The Court also finds there is no real dispute as to whether Defendants knew about Ms. Gamane's ailments. While some conditions may not be readily apparent, the Defendants' filings indicate they knew she had limited mobility, at a minimum, and at a maximum were aware of her various conditions. ECF No. 24 at 5; ECF No. 24-1 at ¶ 23.

### 2. A Cat is Not Necessary Under These Circumstances for Plaintiffs to Have Equal Opportunity to Enjoy and Use Their Dwelling

Whether an ESA is necessary for a party to have equal opportunity to use and enjoy their dwelling is a highly fact-specific question, but the Court recommends a finding that Plaintiffs have failed to establish that an emotional support cat is necessary to their enjoyment and use.

An accommodation is necessary when "but for the accommodation, a disabled person 'likely will be denied an equal opportunity to enjoy the housing of their choice.'" *Phillips v. Acacia on the Green Condo. Ass'n*, 2022 U.S. App. LEXIS 14688, at *6 (6th Cir. 2022) (quoting *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002)). More specifically, "the requested accommodation must 'ameliorat[e] the effects of the [plaintiff's] disability.'" *Phillips*, 2022 U.S. App. LEXIS, at * 6 (quoting *Howard*, 276 F.3d at 806) (alteration in original). This requirement highlights the entire point of this federal protection: there must be some causal connection between the disability, the support an ESA would provide, and use or enjoyment. *Anderson v. City of Blue Ash*, 798 F.3d 338, 361 (6th Cir. 2015) (quoting *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014)).

*Anderson v. City of Blue Ash* is instructive on this point.³ 798 F.3d at 345. In that case, a mother appealed the district court's summary judgment ruling in favor of the defendant city. *Anderson*, 798 F.3d at 345. She claimed the city violated the FHA's reasonable accommodation requirement (among other theories) by banning horses from residential property and then "criminally prosecut[ing] Anderson for violating" the municipal ban. *Id*. at 345, 360.

To make a long fact-pattern short, Anderson claimed that the miniature horse(s) she kept on her residential property were necessary for her disabled daughter to enjoy their property. *Id*. at 361. The mother alleged the miniature horse made it possible for her daughter "to play independently in her backyard as a non-disabled child can, and so having the horse at her house is necessary for her equal use and enjoyment of her dwelling." *Id*. The horse was more than a companion; it "provid[ed] stability and balance" for the child while she walked such that she could "play independently in her backyard as a non-disabled child could . . . ." *Id*. at 347, 361 (internal citations omitted). The Sixth Circuit agreed with Anderson and found that there were sufficient facts for a jury to find that a miniature horse was a necessary accommodation. *Id*. at 362.

Here, Plaintiffs provided *no* argument upon which the Court might make a finding that an emotional support cat is *necessary*. They made no causal connection between Ms. Gamane's disabilities (either mental or physical) and the assistance a cat may provide. Plaintiffs simply

---

³ There is another significant Sixth Circuit case that discusses necessity in the context of a party who has lived without the requested accommodation for a period of time prior to seeking the alteration in restrictions. In *Howard v. City of Beavercreek*, the Sixth Circuit considered a gentleman's request to construct a six-foot fence along one side of his property that would otherwise violate the city's zoning laws. 276 at 804-805. The Sixth Circuit upheld the lower court's ruling that the accommodation was not necessary based, in part, on the fact Plaintiff had lived at that residence for decades prior to requesting the fence. *Id*. at 806. Defendants here assert that Ms. Gamane lived cat-free at Bells Retirement Village for three years prior to requesting an accommodation, which, like *Howard*, shows that the cat is not necessary. ECF No. 24 at 4. The Court agrees with this observation, but is willing to consider that this case is distinguishable in that Ms. Gamane's medical condition is significantly different from the disability asserted in *Howard*. The Court recognizes that Ms. Gamane's health has likely declined in a short period of time and what may not have been strictly necessary five years ago may have changed.

argued that they "made a reasonable accommodation request and Defendants refused." ECF No. 21-1 at 8. Plaintiffs needed to make a direct connection between Ms. Gamane's ailments, the assistance an emotional support cat would provide, and how that assistance would enable Plaintiffs to have equal opportunity in their enjoyment and use of their quarters at Bells Retirement Village. They made no such argument.

For their part, Defendants cite to the U.S. Department of Housing and Urban Development's Notice published January 20, 2020, that "explains certain obligations of housing providers under the . . . FHA with respect to animals that individuals with disabilities may request as reasonable accommodations." U.S. DEP'T OF HOUSING AND URB. DEV., FHEO-2020-01, 1, ASSESSING A PERSON'S REQUEST TO HAVE AN ANIMAL AS A REASONABLE ACCOMMODATION UNDER THE FAIR HOUSING ACT (2020). This guide notes that housing providers may require "the person requesting the accommodation [to] provide[] information which reasonably supports that the animal does work, performs tasks, provides assistance, and/or provides therapeutic emotional support with respect to the individual's disability[.]" U.S. DEP'T OF HOUSING AND URB. DEV., FHEO-2020-01 AT ¶ 7.

Defendants note that Plaintiffs' filings, and the health care provider's letter, do "not provide any information that demonstrates a relationship or connection between any disability and the services to be provided by the animal."[4] ECF No. 24 at 3. Instead, according to Defendants, "it appears that Plaintiff simply wants to have a pet in her apartment and is attempting to circumvent

---

[4] Defendants also argue that the documentation provided by Ms. Gamane's medical provider includes "false information" because it states Ms. Gamane "recently lost her cat of many years." ECF No. 24 at 3. Defendants dispute the word "recent" in that statement, given that Ms. Gamane has lived at Bells Retirement Village for "over three years prior to requesting an ESA." ECF No. 24 at 3. The Court acknowledges this discrepancy but will not rest its analysis on the medical provider's interpretation of just how recently Ms. Gamane may have lost a beloved pet.

the facility's no-pet policy by claiming that she requires an ESA." ECF No. 24 at 4.

The Court RECOMMENDS a finding that Plaintiffs failed to carry their burden in establishing that an ESA is necessary for Ms. Gamane to enjoy and use her dwelling at Bells Retirement Village because Plaintiffs failed to make *any* causal connection between Ms. Gamane's disability, the support an ESA would provide, and her enjoyment or use of the premises.

### 3. A Cat is Not a Reasonable Accommodation Under These Circumstances

Additionally, the Court recommends a finding that an emotional support cat is not a reasonable accommodation under these circumstances. Plaintiffs again had the burden of establishing the reasonableness of their accommodation request. The sticking point here is whether the addition of an ESA to Bells Retirement Village will amount to a "fundamental alteration of the program" provided by Defendants, or whether the ESA will pose "undue financial and administrative burdens" for Defendants. *Howard*, 276 F.3d at 806 (internal quotations omitted).

Plaintiffs again fail to present a persuasive argument on the point of reasonableness. They categorize their request as "reasonable" a number of times but offer no analysis regarding whether an emotional support cat will unduly impose burdens on Defendants.

Defendants provide a more robust argument.[5] They counter that the Ms. Gemane's apartment at Bells Retirement Village are cleaned by staff; because Ms. Gamane is unable to care for herself, cleaning up after the cat (i.e. its litter box) would "likely fall on the staff . . . ." ECF No. 24 at 5. Additionally, Defendants note that "[a] retirement home is designed for people who have reached an age and physical condition that renders them unable to live alone" which likely

---

[5] Defendants include these facts under the umbrella of "substantial harm" in the preliminary injunction analysis. ECF No. 24 at 4-5. However, the Court finds them applicable to the issue of reasonableness and will consider them here, as well.

10

means "adequately car[ing] for an animal" would "plac[e] a burden on the staff." ECF No. 24 at 5.

The Court understands that residents of Bells Retirement Village enjoy services as part of their lease agreements. While Bells Retirement Village does not provide medical care to residents, it does provide dining facilities that offer two meals per day to residents. ECF No. 24-1 at 7. Additionally, this facility is "designed for older individuals" which means "staff members enter the residents' apartments at least five (5) times per day" for things like housekeeping and food delivery. ECF No. 24-1 at 2. It appears then, to the Court, that this is a facility that caters to older individuals seeking certain comforts and amenities. This is not an apartment complex that houses a wide demographic of residents. *See Castellano v. Access Premier Realty, Inc.*, 181 F. Supp. 3d 798 (E.D. Cal. Apr. 15, 2016). This development is specifically designed to assist elderly citizens that do not yet require around-the-clock medical care.

The Court recommends a finding that allowing an ESA in Bells Retirement Village would amount to a "fundamental alteration of the program" provided by Defendants as well as an undue burden on the staff. *Howard*, 276 F.3d at 806 (internal quotations omitted). This complex provides more than just housing and basic maintenance. There are staff members that are required to interact with, and assist, residents on a frequent, daily basis. As such, the Court finds Defendants' argument persuasive. Staff members are expected to assist adult humans. The likelihood that Plaintiffs will either need assistance in caring for a cat—or that a cat will interfere with staff members' ability to assist Plaintiffs—is too obvious to ignore.

This is especially true for two reasons. First, the Court finds it difficult to believe Plaintiffs will be able to adequately care for a cat. Defendants plain assertion (and Plaintiffs' failure to rebut it) is that Ms. Gamane is unable to care for herself and that Mr. Gamane requires assistance in caring for Ms. Gamane. ECF No. 24 at 5. As Defendants note, indoor cats require litterboxes that

11

must be cleaned regularly in order to maintain proper sanitation. ECF No. 24 at 5. The potential for damage to property in this case is too probable; if staff from Bells Retirement Village do not assist in cleaning a cat's litterbox (something certainly outside of the job description currently), and Plaintiffs fail to maintain one properly, then the logical conclusion is the cat will find other places to relieve itself. Bells Retirement Village has a strong argument in this regard that an emotional support cat is not reasonable under the circumstances because of potential damage to property.

Second, Defendants assert that there are other residents in the facility that are allergic to cats. ECF No. 24 at 4. This complex is different from other apartment complexes. Residents here share hallways, share common eating spaces, and share staff members that come in and out of each apartment. The danger posed to allergic residents in an assisted living facility is much greater than the risks posed to another tenant at a standard apartment complex. The chances of exposure to cat dander and other allergens is much higher with the shared spaces and shared staff. Additionally, residents at Bells Retirement Village are likely in more fragile health conditions than the average tenant. Exposure to an allergen for a Bells Retirement Village resident likely has much more severe consequences than that of a normal tenant in a normal complex.[6]

The Court therefore RECOMMENDS a finding that Plaintiffs have not established the

---

[6] There is case law noting that in order to challenge the reasonableness of an ESA on the grounds that it poses a danger to other tenants or may cause property damage, that the challenge must "be based on an individualized assessment of the specific animal's actual conduct. Notice FHEO-2013-01 at 3. The assessment may not be speculative and may not be based on evidence of harm that other animals have caused." *Castellano v. Access Premier Realty, Inc.*, 181 F. Supp. 3d 798, 808 (E.D. Cal. Apr. 15, 2016); *see also Arnal v. Aspen View condo Ass'n*, 226 F. Supp. 3d 1177 (D. Ct. Co. Dec. 27, 2016). The Court notes the fine line it is walking here by making generalizations about cats, writ large, as opposed to evaluating one cat in particular. The discrepancy here is that Plaintiffs do not have a particular or specific animal for the Court to evaluate like the court in *Castellano*. However, the Court can evaluate the risks posed by any cat given the specific issues of allergies and litter boxes that would apply to *all* cats living in a retirement village like the one at issue, no matter their temperament or behavior.

reasonableness of a cat as an accommodation at this time. Regarding the requirement that Plaintiffs show a likelihood of success on the merits, the Court RECOMMENDS a finding that Plaintiffs failed to carry their burden.

### B. PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM

Plaintiffs also needed to establish that they will suffer irreparable harm if the TRO and preliminary injunction are not issued. This requirement means Plaintiffs must establish that "absent a TRO" or preliminary injunction, their "interests would be damaged in ways that could not be remedied later on in the legal process." *Dinter v. Rok Miremami*, 2022 U.S. Dist. LEXIS 180223, at *11 (E.D. Ky. Sept. 13, 2022) (citing *Southern Glazer's Distribs. Of Hio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 852 (6th Cir. 2017)). Usually, there is no irreparable harm where monetary damages will fully compensate the aggrieved party. *Overstreet*, 305 F.3d at 578. Courts in this circuit have found a showing of irreparable harm where a party seeking to keep a service or support animal may be required to move out of their residence absent a preliminary injunction. *Dinter*, 2022 U.S. Dist. LEXIS 180223, at *11-12; *Entine v. Lissner*, 2017 U.S. Dist. LEXIS 190289, at *27-28 (S.D. Ohio Nov. 17, 2017).

Plaintiffs do not currently possess a cat. As such, they cannot complain that they are facing eviction from Bells Retirement Village because of the presence of an unauthorized ESA. Their argument regarding irreparable harm is simply two sentences: "Every day that the Defendants deny her this request [to have an ESA] is another day that she does not get with[] the assistance of her emotional support animal. Every day without her emotional support animal is another day that an irreparable injury occurs." ECF No 21-1 at 7.

Defendants point out that Plaintiffs have lived "in the apartment for over three years prior to even requesting an accommodation" which "necessarily shows that Plaintiffs will not be

13

irreparably harmed." ECF No. 24 at 4. They also argue that "Plaintiffs have not shown that they will suffer any irreparable harm by continuing the status quo for the pendency of this action." ECF No. 24 at 4.

The Court finds it difficult to agree with Plaintiffs' position because they failed to fully articulate precisely *why* Ms. Gamane requires an ESA. It is impossible to evaluate what harm, if any, will occur should Ms. Gamane continue to live without an emotional support cat. Plaintiffs offered no cogent argument that such an animal would assist Ms. Gamane with any activity, aid her in coping with her alleged anxiety or depression, or even help her sleep at night. Without such information, it again appears as though the harm is simply that Ms. Gamane will continue wanting a cat while this case proceeds. Moreover, these facts are distinguishable from those cases where courts issue a preliminary injunction with regard to ESAs. First, Ms. Gamane does not currently have a cat that she would be required to remove from the premises. *See Entine*, 2017 U.S. Dist. LEXIS 190289, at *27-28 Second, it does not appear from these filings that Defendants are seeking to evict Plaintiffs because they have a cat. *See id.*; *see also Dinter*, 2022 U.S. Dist. LEXIS 180223, at *11-12. As such, the Court finds no basis upon which to rest a finding that Plaintiffs will suffer irreparable harm absent an injunction.

Therefore, the Court RECOMMENDS a finding that Plaintiffs failed to establish that they will suffer irreparable harm.

### C. GRANTING AN INJUNCTION AT THIS TIME WOULD CAUSE SUBSTANTIAL HARM TO DEFENDANTS

The third factor for the Court to consider is whether granting Plaintiffs' request for an injunction would cause "substantial harm to others." *Overstreet*, 305 F.3d at 573. This factor is usually aimed at evaluating "harm to third parties," but the Court may "also . . . consider the

balance of hardships between the parties" if the Court were to grant an injunction. *Dinter*, 2022 U.S. Dist. LEXIS 180223, at *13 (internal quotations omitted).

Plaintiffs argue that any harm caused to Defendants can be solved with monetary damages, like "charging fees for any damage caused by an emotional support pet . . . ." ECF No. 21-1 at 7. They go so far as to say there "would be *no* harm in allowing an assistance animal on the premises, certainly not a substantial harm." ECF No. 21-1 at 7 (emphasis added).

Defendants, of course, argue the opposite. In asserting the substantial harm posed by an emotional support cat, they claim the danger posed to allergic staff and residents constitutes substantial harm. ECF No. 24 at 4-5. Apparently, there is one staff member "that has a fear of cats." ECF No. 24 at 4. Additionally, Defendants bring up the property damage posed by a cat that may "claw[], chew[], and spray[]" in the facility. ECF No. 24 at 5. These potential damages are, in part, why Bells Retirement Village "implemented a no-pet policy" in the first place. ECF No. 24 at 5. While "landlords may have to shoulder certain costs" in order to not run afoul of the FHA, this case is separate from those in which courts have issued preliminary injunctions. *Castellano*, 181 F. Supp. 3d at 807. Here, the burden on the facility management is higher than that of a normal complex owner because the staff at Bells Retirement Village is responsible for providing cleaning services. The facility cannot be expected to incur additional labor costs to help clean up after an emotional support cat.[7]

---

[7] While Defendants cite to a litter box, specifically, the Court envisions a broader problem. Certainly, Plaintiffs may be amenable to agreeing to clean up after the cat on their own, in an effort to make the presence of an ESA more reasonable. But there is likely no way to meaningfully distinguish what, then, is the staff's responsibility and what is the responsibility of Plaintiffs. Must the Bells Retirement Village staff clean up hair balls? Vacuum only those spaces not affected by cat hair? Lint roll furniture? Clean shelves only covered in human-made dust? The point is that there can be no clear distinction between what Defendants would be responsible for under the lease and what Plaintiffs would be responsible for under the accommodation. The addition of a cat necessarily changes the nature of the services provided by Defendants in this regard, and requiring them to expend more time and energy providing cleaning services that include an animal does not weigh in Plaintiffs' favor.

15

Focusing on third parties, the Court is persuaded by Defendants' assertion that there are residents at Bells Retirement Village that suffer from cat allergies. In a normal apartment complex, where neighbors do not share the same dining facility and the average tenant is younger and likely in better health, the Court may weigh the interests of Plaintiffs' neighbors differently. Here, however, the Court is concerned that Plaintiffs and other residents share more common spaces than the average apartment complex neighbors, and the residents at Bells Retirement Village are more likely to suffer from additional medical ailments that could be exacerbated by allergic reactions.

Focusing on the balance of the interests between Plaintiffs and Defendants, the undersigned is concerned about the hardships Defendants would face if the Court were to grant an injunction allowing Plaintiffs to have an emotional support cat. In order to protect allergic residents, Defendants may be required to rearrange which residents are in which rooms. In order to protect allergic and fearful staff members, Defendants may have to rearrange work schedules or areas of responsibility. Finally, in order to ensure the cat does not damage the property, Defendants may be required to task staff with an additional duty such as cleaning a litter box or conducting additional inspections of Plaintiffs' apartment. Those tasks, of course, would need to be compensated accordingly, thus requiring Defendants to take on an additional expense.

For all of the above reasons, the Court RECOMMENDS a finding that issuing an injunction at this stage would cause substantial harm to others.

### D. THE PUBLIC INTEREST DOES NOT WEIGH IN FAVOR OF GRANTING AN INJUNCTION

Certainly, there is a great public interest in ensuring that there is "fair housing throughout the United States." 42 U.S.C. § 3601. There is "significant public interest in eliminating discrimination against individuals with disabilities . . . ." *Dinter*, 2022 U.S. Dist. LEXIS 180223,

16

at *14 (internal quotations omitted).

Plaintiffs argue that "Courts have gone as far as to say that "the public interest in penalizing and preventing discrimination . . . in housing decisions *necessitates the issuance of temporary injunctive relief*." ECF No. 21-1 at 8 (citing *Ctr. for Soc. Change, Inc. v. Morgan Prop. Mgmt. Co., LLC*, 2019 U.S. Dist. LEXIS 38994, at *5 (D. Ct. Md. Mar. 11, 2019) (emphasis added)). The argument ends there. Plaintiffs provide *no* analysis as to how the public interest in ending housing discrimination is furthered in *this case* by granting an injunction that would allow Ms. Gamane to have an emotional support cat.

Nor could they. Because it appears as though Plaintiffs will not be successful on the merits of their claim, there is no viable connection to the argument that issuing an injunction would end a discriminatory practice on the part of Defendants and thus vindicate the rights of the disabled. As such the Court RECOMMENDS a finding that the public interest would be served best by issuing an injunction.

## IV. CONCLUSION

The above analysis yields the following conclusions: Plaintiffs likely cannot succeed on the merits of their claim, they will suffer no irreparable harm, Defendants and other third parties will suffer substantial harm, and the public interest is not best served by issuing an injunction at this time. As such, under the preliminary injunction standards, the undersigned RECOMMENDS DENYING Plaintiffs' Motion for a Temporary Restraining Order and Motion for Preliminary Injunction.

RESPECTFULLY SUBMITTED, this the 5th day of May, 2023.

<u>s/Jon A. York</u>
UNITED STATES MAGISTRATE JUDGE

**IF DESIRED, AN APPEAL OF THIS REPORT AND RECOMMENDATION TO THE PRESIDING DISTRICT COURT JUDGE MUST BE FILED WITHIN FOURTEEN (14) DAYS OF THE SERVICE OF A COPY OF THIS ENTRY.** *SEE* **28 U.S.C. § 636(b)(1)(C); LOCAL RULE 72(g)(2). FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**