IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |
|---|---|
| SUSAN GAMANE AND JOHN GAMANE<br><br>  Plaintiffs,<br><br>v.<br><br>CRAIG LAMAN, MIA DIAMOND, HARBER-LAMAN, LLC, HARBER-LAMAN HEALTHCARE MANAGEMENT, AND BELLS RETIREMENT VILLAGE<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 1:22-cv-01199-JDB-jay<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER ADOPTING REPORT AND RECOMMENDATION, DENYING PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER AND DENYING PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on objections by Plaintiffs, Susan Gamane ("Mrs. Gamane") and John Gamane ("Mr. Gamane"), to the Report and Recommendation issued by United States Magistrate Judge Jon A. York recommending that Plaintiffs' Motion for Temporary Restraining Order and for Preliminary Injunction be denied. (Docket Entry "D.E." 33.)

**I. BACKGROUND**

In February 2018, Mrs. Gamane suffered a stroke resulting in severe health complications and in August 2018, she and her husband, Mr. Gamane, moved into Bells Retirement Village. (D.E.1 at PageID 2.) Their lease agreement provided that "NO PETS nor animals of any type . . . shall be permitted in the apartment at any time . . . ." (D.E. 24-1 at PageID 127.) As such, Plaintiffs moved into the apartment without any animals. Bells Retirement Village is a multi-apartment

independent living facility designed for the elderly where staff provide housekeeping services, deliver food, and regularly enter residents' units. (*Id.* at PageID 122.) While residents have their own private apartments, they share hallways and common eating spaces.

Plaintiffs initiated this action against Defendants, Craig Laman, Mia Diamond, Harber-Laman, LLC, Harber-Laman Healthcare Management, and Bells Retirement Village, on September 15, 2022, alleging that Defendants refused to allow Mrs. Gamane to have an emotional support animal ("ESA") and thus failed to make a reasonable accommodation in contravention of the Fair Housing Amendments Act ("FHAA"). (D.E. 1.). According to Plaintiffs' objections, in November 2022, Mrs. Gamane enrolled in hospice care as a result of her kidney disease. (D.E. 35 at PageID 269.) On February 16, 2023, Plaintiffs filed a Motion for a Temporary Restraining Order and a Preliminary Injunction. (D.E. 18, 21-1.)[1] The motion requests a preliminary injunction that would grant Mrs. Gamane the right to have a cat—the ESA—for the pendency of the litigation and a temporary restraining order ("TRO") that would "prevent[] the Defendants from interfering with the Plaintiffs' tenancy or right to peaceful enjoyment of their home." (D.E. 21-1 at PageID 97-98.)

On May 5, 2023, Judge York issued his Report and Recommendation concluding that Plaintiffs motion be denied. (D.E. 33.) Plaintiffs filed timely objections on May 19, 2023, (D.E. 35) to which Defendants responded. (D.E. 36.)

---

[1] The Court referred the motion at D.E. 18, but on February 22, 2023, the Gamanes submitted a correction to the motion at D.E. 21-1. The motion at 21-1 is identical to D.E. 18 except that it contains notary stamps and certificate of consultation. The Report and Recommendation refers to the motion at D.E. 21-1. For clarity, the Court will also cite to D.E. 21-1.

## II.     STANDARD OF REVIEW

The Federal Magistrate Judges Act allows the district court to designate magistrate judges to issue "proposed findings of fact and recommendations for the disposition" of a motion for injunctive relief. 28 U.S.C. § 636(b)(1)(B). Within fourteen days of the issuance of the recommendation, either party may file objections. *See* 28 U.S.C. § 636(b)(1)(C). The Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." *Id.* After reviewing the evidence, the Court may accept, reject, or modify the findings or recommendations. *Id.* The Court need not review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no specific objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Rather, the Court may simply adopt unobjected findings and rulings of the magistrate judge. *Id.* at 151.

## III.     DISCUSSION

Motions for a TRO or a preliminary injunction are "considered under the same standard . . . ." *G.S. ex rel. Schwaigert v. Lee*, 558 F. Supp. 3d 601, 607 (W.D. Tenn. 2021). That standard requires balancing four elements: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Wilson v. Williams*, 961 F.3d 829, 836 (6th Cir. 2020) (quoting *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015)). Although no one factor is controlling and the four factors must be "balanced against each other[,]" the "likelihood of success on the merits often will be the determinative factor." *Id.* (first quoting *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573

(6th Cir. 2002); and then quoting *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014)). Preliminary injunctions are "extraordinary remed[ies] which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573 (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). Furthermore, "[t]he purpose of a preliminary injunction is simply to preserve the status quo . . . ." *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

The FHAA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, which such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B). To succeed on a claim that a housing provider failed to reasonably accommodate a disability, and thus to prove the likelihood of success on the merits, the plaintiff must show that:

> (1) she suffers from a disability within the meaning of FHA; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation.

*Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011) (internal quotation omitted).

A. Plaintiffs Are Unlikely to Succeed on the Merits Because a Cat is Neither Necessary nor Reasonable

Judge York recommended a finding that Mrs. Gamane suffered from a disability under the FHAA, that Defendants knew of her disability, and that they refused to make the requested

4

accommodation. (D.E. 33 at PageID 251-58.) However, the Report and Recommendation concluded that Plaintiffs had not established a likelihood of success on the merits because a cat was neither necessary for Plaintiffs to have equal opportunity to use and enjoy their dwelling nor a reasonable accommodation. (*Id.*) Plaintiffs object arguing that a cat is necessary for Mrs. Gamane because "[w]ithout the emotional support animal, Mrs. Gamane cannot enjoy her tenancy due to the serious stress and depression she endures because of her disability status." (D.E. 35 at PageID 271.) They further assert that a cat is a reasonable accommodation because any potential hardship that an ESA would cause staff or other residents "is miniscule in comparison to the enormous benefit Mrs. Gamane would receive . . . ." (*Id.* at PageID 272.) Defendants urge the Court to conclude that a cat is not necessary because Plaintiffs have not "provide[d] any evidence of a causal connection between Mrs. Gamane's disability, the support the emotional support cat would provide, and the use or enjoyment of the cat . . . ." (D.E. 36 at PageID 298.) Additionally, they argue that an ESA "is not a reasonable accommodation" given the potential burdens and risks posed to others in the community. (*Id.* at PageID 300.)

Neither party objected to the finding that Mrs. Gamane suffered from a disability within the meaning of the FHAA, that Defendants knew of her disability, and that Defendants refused to accommodate Mrs. Gamane's request for an ESA. The "district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed." *Ashraf v. Adventists Health System/Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018) (citing *Thomas*, 474 at 151). Thus, the Court will conduct de novo review of only whether "the requested accommodation may be necessary to afford an equal opportunity to use and enjoy the dwelling" and whether "the accommodation is reasonable . . . ." *Overlook*, 415 F. App'x at 621.

      i.     A Cat is Not Necessary for Mrs. Gamane to Have Equal Opportunity to Enjoy and Use Her Dwelling

An accommodation is necessary when "but for the accommodation, a disabled person 'likely will be denied an equal opportunity to enjoy the housing of their choice.'" *Phillips v. Acacia on the Green Condo. Ass'n, Inc.*, No. 20-4182, 2022 WL 1692948, at *2 (6th Cir. May 26, 2022) (quoting *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002)). "The requested accommodation must 'ameliorat[e] the effects of the [plaintiff's] disability.'" *Id.* (quoting *Howard*, 276 F.3d at 806) (alterations in original). Necessity requires "a causation inquiry that examines whether the requested accommodation . . . would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014) (citing *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006)). Thus, in order for Plaintiffs to demonstrate necessity, they must show that the ESA would redress the effects of Mrs. Gamane's disability such that it would allow her to enjoy and use her property as a non-disabled person would. *Cf. Hollis*, 760 F.3d at 542-44 (concluding that it is the Plaintiff's burden to establish "both the reasonableness and the necessity of the requested accommodation").

In their objections, Plaintiffs attempt to draw this connection arguing that a cat would ameliorate Mrs. Gamane's "suffering related to her" kidney disease which has placed her in hospice care and "allow her to receive enjoyment from her home as a non-disabled person would." (D.E. 35 at PageID 270.) Indeed, they claim that Mrs. Gamane's physician requested an emotional support cat for her because it "is necessary to provide her with the same comfort care and quality of life as a non-disabled person would receive." (*Id.* at PageID 271.)

In *Howard*, the Sixth Circuit concluded that a zoning variance allowing the construction of

6

a privacy fence was not necessary for the plaintiff, who suffered from post-traumatic stress disorder and a heart condition, to have equal opportunity to use and enjoy his home. 276 F.3d at 805-07. The court based its holding, in part, on the fact that the plaintiff had lived without the requested variance for over a decade. *Id.* Relying in part on *Howard*, the Sixth Circuit in *Anderson v. City of Blue Ash*, held that the requested accommodation, a service animal, was indeed necessary. 798 F.3d 338, 360-62 (6th Cir. 2015). Reversing the district court, the circuit concluded that the service animal was necessary given the letters from the plaintiff's physicians and testimony from her mother. *Id.* at 361-62 ("[T]he FHAA requires accommodations that are necessary to achieve housing equality, not just those accommodations that are absolutely necessary for the disabled individual's treatment or basic ability to function.") More recently, in *Phillips*, the Circuit affirmed the lower court finding that a requested accommodation, a patio grill, for the disabled plaintiff was not necessary. *Phillips*, 2022 WL 1692948, at *3-4. There, the Circuit reached its conclusion after considering that the plaintiff had refused an accommodation recommended by his doctor and offered by the defendant.

Unlike the present case, the above cases each arose on appeal of summary judgment and the Sixth Circuit viewed, in a light most favorable to the plaintiffs, a well-developed factual record replete with a variety of evidence. *Id.* at *1-2; *Anderson*, 798 F.3d at 346-50; *Howard*, 276 F.3d at 804-05. Here, to support their claim that the ESA is necessary, Plaintiffs attach medical records to their objections. (D.E. 35 at PageID 278-95.) These records, however, never mention an ESA or suggest that a cat would mitigate the effects of Mrs. Gamane's disability. (*Id.*) Plaintiffs included a letter from Dr. Andy Coy to the amended complaint in which he suggests that because of Mrs. Gamane's "problems with anxiety and depression" she "would benefit from another cat as

7

an emotional support pet." (D.E. 28 at PageID 230.) That letter does not, however, detail why or how a cat would ameliorate Mrs. Gamane's disability. Indeed, as Defendants note, Plaintiffs are now suggesting that an ESA is necessary because Mrs. Gamane is in a hospice program following complications from diabetes. (D.E. 35 at PageID 269; D.E. at PageID 297.) Would the animal provide therapeutic emotional support because of Mrs. Gamane's depression? Would it provide comfort for pain from her kidney disease?

At this stage, the factual record lacks sufficient evidence to conclude that "but for the [cat], [Mrs. Gamane] 'likely will be denied an equal opportunity to enjoy the housing of [her] choice.'" *Phillips*, 2022 WL 1692948, at * 2 (quoting *Howard*, 276 F.3d at 806). Other than conclusory statements in their objections and Dr. Coy's letter, Plaintiffs have failed to provide evidence that the requested accommodation would redress the effects of her disability such that it would allow her to enjoy and use her dwelling as a non-disabled person would.

      ii.    A Cat is Not a Reasonable Accommodation

To determine a requested accommodation's reasonableness, "a court weighs the requested accommodation's benefits to the plaintiff against the accommodation's burdens on the defendant." *Phillips*, 2022 WL 1692948, at *3 (citing *Anderson*, 798 F.3d at 362). The accommodation "should be deemed reasonable if it imposes no fundamental alteration in the nature of a program or undue financial and administrative burdens." *Anderson*, 798 F.3d at 362 (quoting *Hollis*, 760 F.3d at 541). Plaintiffs bear the burden of proving reasonableness. *Hollis*, 760 F.3d at 544.

The Report and Recommendation concluded that Plaintiffs' request was not reasonable because "allowing an ESA in Bells Retirement Village would amount to a fundamental alteration of the program provided by Defendants as well as an undue burden on the staff." (D.E. 33 at

PageID 256 (internal quotations omitted).)  The Report reached this conclusion noting that staff would likely need to care for Plaintiffs' cat given Mrs. Gamane's disability, the cat could escape into the common areas if not restrained, any ESA could cause property damage if not properly cared for, and other residents were allergic to cats.  (*Id.*)

Plaintiffs characterize this finding as a "doomsday conjecture" arguing that they could care for the ESA without staff intervention and any burden caused to Defendants is "miniscule in comparison to the enormous benefit Mrs. Gamane would receive . . . ."  (D.E. 35 at PageID 272.)  Plaintiffs identify the potential ESA—a cat named "Missy" who is elderly "6lbs, 4oz, quiet" and "moves deliberately . . . ."  (*Id.*)  They further assert that they have purchased an automatic litter box, the ESA does not spray, staff currently knock before entering the room, the cat "would be restricted to Plaintiffs' rental unit," and should Mr. Gamane not be available to care for the animal, Plaintiffs would arrange for the cat to be kenneled.  (*Id.*)

Defendants urge the Court to adopt the Magistrate Judge's finding that a cat is an unreasonable accommodation.  Specifically, they assert, Plaintiffs have "waived any arguments concerning 'Missy' or any other specific [ESA]" because Plaintiffs may not raise new arguments in their objections.  (D.E. 36 at PageID 298-99.)  They also argue that Plaintiffs have failed to rebut the Report's finding that an ESA would present Defendants with financial hardship and undue burden noting that staff will likely have to assist with some cat-related care given Mrs. Gamane's illness.  (*Id.* at PageID 299)  Finally, they argue that a cat "implicates the wellbeing of other residents" who are allergic.  (*Id.* at PageID 300.)

Plaintiffs have waived their argument regarding Missy or any specific ESA because they are raising an issue for the first time in their objections to the Report and Recommendation.  *See*

9

*Morgan v. Trierweiler*, 67 F.4th 362, 367 (6th Cir. 2023) (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).  Importantly, too, Plaintiffs provide no evidence that Defendants denied their request for Missy and thus cannot show a refusal "to make the accommodation," a necessary element to demonstrate success on the merits.  *Overlook Mut. Homes, Inc.*, 415 F. App'x at 621.  Still, on these new facts, their requested accommodation remains unreasonable.

To determine if the accommodation is reasonable, the court must consider "if the costs of implementing it exceed any expected benefits it will provide the person requesting it."  *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 491 (6th Cir. 2019) (citing *Smith & Lee Assocs. V. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996)).  In *Anderson*, the Sixth Circuit held that the request for a zoning variance allowing a therapeutic miniature horse was reasonable after considering a letter from the plaintiff's physician, letters from the plaintiff's neighbors and sworn testimony of the plaintiff.  798 F.3d at 362-63.  In *Phillips*, the court determined that the accommodation was unreasonable where the plaintiff "offered no evidence refuting" the testimony of the defendants' insurance broker.  *Phillips*, 2022 WL 1692948, at *4.

Here, Defendants provide the sworn declaration of Mia Diamond, the administrator overseeing day to day operations at Bells Retirement Village, in which she explains the responsibilities of staff workers, the shared layout of the facility, the potential for animal-related damage, and the presence of other residents and employees who are allergic to cats.  (D.E. 24-1 at PageID 121-24.)  Plaintiffs offer argument but with unsupported statements bereft of citation.  They claim to have purchased a self-cleaning litterbox, that Missy wouldn't cause damage to the property, and that if they leave the facility, Missy could be kenneled offsite.  (D.E. 35 at PageID 272.)  Additionally, they argue that because the ESA would be "restricted to Plaintiffs' rental unit"

10

the threat to allergic third parties would be effectively contained. (*Id.*)

On balance, Defendants have the stronger argument supported by evidence in the record. Staff members enter apartments at least five times every day. (D.E. 24-1 at Page ID 122.) Plaintiffs' proposition that staff simply knock and wait for Missy to be restrained each time they need to enter the apartment would inevitably cause delays and present a financial and administrative burden for Defendants. (D.E. 35 at PageID 272.) Additionally, beyond conclusory statements and Dr. Coy's letter, Plaintiffs fail to provide any evidence to support their claim that an ESA would provide "enormous benefit" to Mrs. Gamane. (D.E. 35 at PageID 272.) Most convincing is Defendants' concern of damage that an ESA could cause to allergic staff and residents. (D.E. 24-1 at PageID 123; D.E. 36 at PageID 300.) In *Davis*, the Sixth Circuit determined that an asthmatic condominium resident's request for a smoking ban was unreasonable in part because it would require a fundamental change to the association's policy that allowed tenants to smoke on the grounds and in their residences. *Davis*, 945 F.3d at 492 (alteration in original) (quoting *Groner v. Golden Gate Apartments*, 250 F.3d 1039, 1046 (6th Cir. 2001)) ("[A] third party's 'rights [do] not have to be sacrificed on the altar of reasonable accommodation."). Likewise, allowing a feline into Defendants' facility could affect those residents and employees who are allergic to cats, who share common eating spaces and hallways with Plaintiffs, and those whose residency may been decided in part upon the no pets policy.

Therefore, on the current record, because Plaintiffs fail to show that a cat is a necessary and reasonable accommodation, the Court cannot conclude that they are likely to succeed on the merits.

11

B. Plaintiffs Will Not Suffer Irreparable Harm

The second factor courts must balance when considering a motion for a preliminary injunction or TRO is "whether the movant would suffer irreparable injury absent the injunction . . . ." *Wilson*, 961 F.3d at 836. Judge York concluded that Plaintiffs will not suffer irreparable harm because they failed to state why Mrs. Gamane requires an ESA, Mrs. Gamane does not currently have a cat, and Defendants are not seeking to evict Plaintiffs. (D.E. 33 at PageID 258-59.) Plaintiffs object arguing that "where a plaintiff seeks injunctive relief to prevent the violation of a federal statute that specifically provides for injunctive relief, a plaintiff need not show irreparable harm." (D.E. 35 at PageID 272-73 (citing *Entine v. Lissner*, No. 2:17-CV-946, 2017 WL 5507619, at *9 (S.D. Ohio Nov. 17, 2017).) Defendants disagree and assert that the Court must consider this second factor. (D.E. 36 at PageID 301-02.)

The FHAA expressly provides for injunctive relief in private civil actions. 42 U.S.C. § 3613(c)(1). Some district courts in the Sixth Circuit presume that "where the plaintiff seeks an injunction to prevent the violation of a federal statute that specifically provides for injunctive relief, [she] need not show irreparable harm." *Jordan v. Greater Dayton Premier Mgmt.*, 9 F. Supp. 3d 847, 862 (S.D. Ohio 2014) (alterations in original) (quoting *Ill. Bell Tel. Co. v. Ill. Com. Comm'n*, 740 F.2d 566, 571 (7th Cir. 1984); *see also United States v. Edward Rose & Sons*, 246 F. Supp. 2d 744, 754 (E.D. Mich. 2003), *aff'd in part*, 384 F.3d 258 (6th Cir. 2004); *Entine*, 2017 WL at *9. Although other circuit courts of appeals have adopted this presumption, the Sixth Circuit has not. *See Edward Rose & Sons*, 384 F.3d at 264 (detailing the approach of sister circuits but declining to adopt the presumption and noting "[w]e balance the equitable factors, and none is a prerequisite"); *see also Lake-Geauga Recovery Ctrs., Inc. v. Munson Twp.*, No. 1:20-CV-02405,

2021 WL 1049661, at *11 (N.D. Ohio Mar. 19, 2021). Furthermore, because Plaintiffs failed to raise this argument before the magistrate judge, it is waived. *Morgan*, 67 F.4th at 367.

Harm from the denial of a preliminary injunction "is irreparable if it is not fully compensable by monetary damages." *Overstreet*, 305 F.3d at 578. Likewise, "[t]o show irreparable harm, a movant must show that, absent a TRO, its interests would be damaged in ways that could not be remedied later on in the legal process." *Dinter v. Miremami*, 2022 U.S. Dist. LEXIS 180223, *11 (E.D. Ky. Sept. 13, 2022) (citing *S. Glazer's Distribs. Of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 852 (6th Cir. 2017)). Plaintiffs must demonstrate that such harm is "likely in the absence of an injunction" or a TRO and not merely speculative. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-22 (2008); *see Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) ("[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical.")

In the FHAA context, courts in the Sixth Circuit have found irreparable harm where a party seeking an injunction to keep their service animal faces eviction absent relief. *Dinter*, 2022 U.S. Dist. LEXIS 180223, at *11-13; *Entine*, 2017 WL 5507619, at *9-10. Here, Mrs. Gamane does not face eviction for having an ESA because she has not possessed a cat since moving to Bells Retirement Village in 2018. (D.E. 1 at PageID 4; D.E. 36 at PageID 301.) Additionally, Plaintiffs continue to fail to set forth facts stating precisely why Mrs. Gamane requires an ESA. They contend that a cat would assist her hospice care and provide relief for her stress, depression, and anxiety. (D.E. 35 at PageID 273.) They further assert that Mrs. Gamane attempted suicide "when she was initially denied the" ESA. (*Id.* at PageID 274.)

To support these assertions, Plaintiffs provide only conclusory statements made in their

13

objections and attach medical records that do not support their claims. The records detail that Mrs. Gamane suffered an insulin overdose in February 2022. (D.E. 35 at PageID 278.) When the attending physician asked if she intended suicide, Mrs. Gamane responded "no" and instead indicated that she took the insulin because she was "hurting" and wanted the pain to stop. (*Id.* at PageID 279.) The records never mention an ESA or suggest that any of Mrs. Gamane's ailments could be alleviated by the presence of one.

Plaintiffs thus fail to show that they will suffer irreparable harm by maintaining the status quo. Indeed, because Mrs. Gamane has not possessed a cat since 2018, the Court finds it difficult to understand why an "extraordinary remedy" such as a preliminary injunction is needed and why any potential harm is certain and immediate rather than speculative. *Overstreet*, 305 F.3d at 573 (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)).

C. Granting an Injunction Would Cause Substantial Harm to Defendants and Third Parties

The third factor asks "whether the issuance of the injunction would cause substantial harm to others . . . ." *Id.* The analysis "focuses on the nonmoving party as well as individuals and entities who are not parties to the action." *Joy v. Burchett*, No. 121CV01190STAJAY, 2022 WL 3652670, at *4 (W.D. Tenn. Aug. 24, 2022). The Magistrate Judge found that granting Plaintiffs' motion would cause substantial harm to Defendants and third parties. (D.E. 33 at PageID 259-61.) Defendants fail to respond to this factor. (D.E. 36.)

Plaintiffs object and point to guidance issued by the United States Department of Housing and Urban Development ("HUD") to support their claim that denials of ESAs "are only appropriate when there will be undue financial *and* administrative burdens." (D.E. 35 at PageID 274.) The guidance recommends that if a housing provider denies the "reasonable accommodation request,"

14

then the parties should "engage in the interactive process to discuss whether an alternative accommodation" may satisfy Plaintiffs' needs. (D.E. 24-2 at PageID 148.) As discussed above, on the available record, Plaintiffs have not made a request for a reasonable accommodation.

Next, Plaintiffs rely on a case from the Eastern District of California to argue that any potential harm that an ESA might cause is too speculative to be considered. (D.E. 35 at PageID 274.) There, the court cited an earlier HUD notice and determined that any "threat of harm to others" that an ESA may pose "must be based on an individualized assessment of the specific animal's actual conduct." *Castellano v. Access Premier Realty, Inc.*, 181 F. Supp. 3d 798, 807-08 (E.D. Cal. 2016). Unlike Mrs. Gamane, the plaintiff in *Castellano* possessed a cat, was ordered to remove it or face eviction, and had her request for a reasonable accommodation to keep the specific animal denied. *Id.* at 802-03. Additionally, more recent HUD guidance "replaces HUD's prior [2013] guidance" and does not contain the same language necessitating an individualized assessment of a specific animal. (D.E. 24-2 at PageID 134.) Finally, as discussed, Mrs. Gamane has waived any argument regarding Missy or any specific ESA for failing to raise it before the Magistrate Judge. *Peete-Jeffries v. Shelby Cnty. Bd. of Educ.*, No. 222CV02003TLPTMP, 2022 WL 17620287, at *3 (W.D. Tenn. Dec. 13, 2022) (quoting *Murr*, 200 F.3d at 902 n.1) ("[A] party cannot 'raise at the district court stage new arguments or issues that were not presented to the magistrate [judge]' absent compelling reasons.")

Plaintiffs finally attempt to offer proposed solutions to the potential harms to Defendants and others that the Report and Recommendation identified. They suggest that staff knock and wait before entering the apartment to allow Plaintiffs to secure the cat and contend that Plaintiffs will be able to take care of the animal without any additional responsibilities for the staff. (D.E. 35 at

15

PageID 274-75.)  As discussed, however, because staff enter residents' apartments several times each day, delays in waiting to enter Plaintiffs' unit could be prolonged by the need to cage the ESA.  This would necessarily create a financial and administrative burden on Defendants as they would need to augment their work schedule around Plaintiffs ability to contain the ESA.  More obvious is the potential danger to other residents who might be allergic to cats.  Although any cat may be contained within Plaintiffs' apartment, cat allergens could spread from the unit to the shared spaces including the hallways and dining areas.  Therefore, this factor weighs against granting an injunction or TRO.

    D.  The Public Interest Will Not Be Served by Granting a Preliminary Injunction

The fourth and final factor is "whether the public interest would be served by issuing the injunction."  *Overstreet*, 305 F.3d at 573 (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)).  As the Report and Recommendation noted, there is certainly "great public interest in ensuring that there is 'fair housing throughout the United States.'"  (D.E. 33 at PageID 261 (quoting 42 U.S.C. § 3601).)  The Report concludes that Plaintiffs fail to show that the public interest weighs in their favor because "there is no viable connection . . . that issuing an injunction would end a discriminatory practice . . . of Defendants and thus vindicate the rights of the disabled."  (*Id.* at PageID 262.)

Plaintiffs object citing *Dinter* for the proposition that the "mere existence of statutes 'reflect the fact there is significant public interest in eliminating discrimination against individuals with disabilities and that this interest is furthered by appropriate injunctive relief."  (D.E. 35 at PageID 276 (quoting *Dinter*, 2022 U.S. Dist. LEXIS 180223, at *14).)  Of course, the public interest is furthered by responding to housing discrimination against individuals with disabilities as

16

authorized by the FHAA. *See* 42 U.S.C. § 3613(c). However, as the Magistrate Judge found, because Plaintiffs are unlikely to be successful on the merits of their claim on the present facts, there is no discriminatory practice to end or any FHAA rights to be vindicated. (D.E. 33 at PageID 262.) Therefore, the public interest that is furthered by effectuating the intent of the FHAA is inapplicable here and this factor weighs against granting the motion.

IV.     CONCLUSION

For the reasons set forth above, Plaintiffs are unlikely to succeed on the merits of their claim, will not suffer irreparable harm, Defendants and third parties will suffer substantial harm, and the public interest is not best served by the issuance of an injunction or TRO at this time. As such, Plaintiffs' motion is hereby DENIED.

IT IS SO ORDERED this 30th day of June 2023.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE